IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Vincent E. Hudson, | ) | C/A No.  3:13-429-CMC-PJG |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| City of Columbia, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Through this action, Plaintiff, Vincent E. Hudson ("Hudson") seeks recovery from his employer, the City of Columbia ("the City"), for alleged racial discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"). Hudson's claims focus on the City's failure to promote him to the position of Battalion Chief in 2011, but include allegations relating to non-promotion in 2012 .  Complaint ¶ 21 (ECF No. 1) (conceding his non-promotion in 2011 followed his failure to obtain a passing score on the supplemental application); Complaint ¶¶ 30, 31 (alleging that, after he reported complaints in 2012, he was "passed over for [promotion] even though he successfully completed the testing requirements").  Hudson also alleges that he was subjected to retaliatory actions between 2011 and 2012.  Complaint ¶ 40 (alleging that the City "retaliated against [him] by failing to promote him for jobs for which he was eligible [and] harassed and intimidated him"); Complaint ¶ 41 (alleging retaliatory station transfer).  Finally, Hudson alleges he was denied overtime pay to which he was entitled.  *Id.*

The matter is before the court on the City's motion for summary judgment. ECF No. 24.  For the reasons set forth below, the City's motion is granted in full.

**PROCEDURAL BACKGROUND**

In accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02 (B)(2)(g), D.S.C., this matter was referred to United States Magistrate Judge Paige J. Gossett for pre-trial proceedings and a Report and Recommendation ("Report"). On December 2, 2014, the Magistrate Judge issued a Report recommending that the City's motion for summary judgment be granted in full. Report (ECF No. 34). The Magistrate Judge advised the parties of the procedures and requirements for filing objections to the Report and the serious consequences if they failed to do so.

Hudson filed timely objections on December 17, 2014, arguing that summary judgment should be denied as to all of his claims. ECF No. 36.[1] The City responded on December 23, 2014, urging the court to adopt the Report in full and grant summary judgment on all claims. ECF No. 37.

**STANDARD**

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight, and the responsibility for making a final determination remains with the court. *See Mathews v. Weber*, 423 U.S. 261 (1976). The court is charged with making a *de novo* determination of any portion of the Magistrate Judge's Report and Recommendation to which a specific objection is made. The court may accept, reject, or modify, in whole or in part, the recommendation made by the Magistrate Judge or recommit the matter to the Magistrate Judge with instructions. *See* 28 U.S.C. § 636(b). In the absence of a specific objection, the court reviews the Report and Recommendation only for clear error. *See Diamond v. Colonial Life & Accident Ins. Co.*,

---

[1] The Report concludes by "recommend[ing] that defendant's motion for summary judgment . . . be granted." ECF No. 34 at 13. The recommendation as to the retaliation claim is, however, based on Hudson's failure to "properly exhaust" his administrative remedies and consequent failure to "invoke[] the court's jurisdiction." Thus, this recommendation is more accurately a recommended dismissal of the retaliation claim for lack of subject matter jurisdiction.

416 F.3d 310, 315 (4th Cir. 2005) (stating that "in the absence of a timely filed objection, a district court need not conduct a *de novo* review, but instead must only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation") (citation omitted).

## DISCUSSION

To constitute a "specific objection" warranting *de novo* review, an objection must be made with "sufficient specificity so as reasonably to alert the district court to the true ground for the objection*." U.S. v. Midgette*, 478 F.3d 616, 622 (4th Cir. 2007) (addressing specificity requirement in context of determining whether issue was preserved for appeal). To require less would "defeat the purpose of requiring objections[,]" because judicial resources would be wasted and the district court's effectiveness would be undermined. *Id.*; *see also Orpiano v. Johnson,* 687 F.2d 44, 47 (4th Cir. 1982) (court not required to conduct a *de novo* review when presented with only "general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations").

Although it is clear from his objections that Hudson disagrees with all of the Magistrate Judge's recommendations, Hudson has not provided the degree of specificity necessary to entitle him to a *de novo* review. This is because Hudson's objections do little more than identify the recommendations to which he objects, followed by a superficial (and often inaccurate) characterization of previously cited evidence and arguments offered in his memorandum in opposition to summary judgment.

For example, Hudson's second objection challenges the recommendation that the court find he "cannot establish a *prima facie* case as it relates to comparing himself to a similarly situated

individual outside of his protected class." ECF No. 36 at 3. The entirety of Hudson's objection to this recommendation is as follows:

> Plaintiff presented evidence on the issue of whether or not he was treated differently than similarly situated individuals who were not African American. For example, Plaintiff directly compared himself to the class of 2009, wherein white applicants underwent similar testing conditions but were promoted, unlike Plaintiff. Plaintiff further described how some of [sic] white men competed with him in the promotional testing process and were placed ahead of him on the promotional list in 2011 and 2012. By virtue of the requirements for the testing process and based upon the theory of the testing as described by Tomes, the participants, before being scored, are similarly situated in their respective positions and lines of work because they are vying for the *same* promotion.
>
> Plaintiff's testimony and proffered evidence refutes the contention that he failed to establish the comparator prong of the *prima facie* test.

ECF No. 36 at 3.

This objection is too general to warrant *de novo* review because it fails to provide any detail as to why the "class of 2009" as a group or the unidentified white men who competed with Hudson in the promotional testing process should be held to be appropriate comparators (and, consequently, why the Report erred in concluding Hudson had not presented adequate comparator evidence). *See infra* Discussion § B. Neither does Hudson cite any supporting evidence or legal authority for this abbreviated argument.[2]

Hudson's arguments on other issues are similar as they, at most, summarize the recommendations in the Report, state that he disagrees with the recommendation, and provide a

---

[2] In a footnote, Hudson states that "[a] copy of all deposition testimony and exhibits *cited herein* were submitted" with his prior opposition memorandum and "craves reference" to the same "as if attached hereto and resubmitted." ECF No. 36 at 1 n.1 (emphasis added). Hudson does not, however, cite any supporting evidence at any point in his objection memorandum. Neither does he direct the court to any legal authority or even specific pages of his prior memorandum. In fact, his only citations are to the Report.

4

superficial characterization of his prior arguments.[3] For example, Hudson's entire argument on the Wage Claim is as follows:

> The [H]onorable Magistrate Judge argues that the FLSA addresses firefighter overtime pay and because of that, Plaintiff does not have a claim for unpaid overtime because his schedule was reflective of that outlined by the FLSA for firefighters. (Dkt. No. 34, p. 12). However, Plaintiff provided sufficient evidence that the rate and way in which he was paid did not align with the FLSA mandates, specifically through his testimony and that of similarly situated firefighters.

ECF No. 36 at 5-6.

Despite their length, Hudson's objections provide the court with no greater specificity than had he stated: "I disagree with the Magistrate Judge's conclusions, and I do so for the reasons I argued in my memorandum in opposition to summary judgment." This amounts to no more than a general objection because it is impossible to draw meaning from Hudson's objections without a review of his entire prior submission. As noted above, allowing such an approach would defeat the purpose of requiring specific objections as a prerequisite to *de novo* review because it would increase, rather than decrease, the burden on the judiciary, thus defeating the purpose of the magistrate judge system.[4]

For these reasons, the court finds Hudson is not entitled to a *de novo* review. In an abundance of caution, the court has, nonetheless, conducted a full *de novo* review to the extent Hudson made even a non-specific objection. Having done so, the court concludes that the Report was correct both in its reasoning and recommendations.

---

[3] Hudson's characterizations of his prior arguments are often inaccurate and are not, in any event, persuasive.

[4] The inadequate specificity is particularly troubling given that Hudson is not only represented by counsel, but by counsel with substantial experience in employment litigation. Given this district's routine referral of such matters to a magistrate judge for pretrial proceedings, counsel should be well aware of the need for specificity in any objection to a report and recommendation.

In reaching this conclusion, the court has taken each of Hudson's generalized objections, searched his prior opposition memorandum for supporting arguments and citation to evidence, and considered those arguments and cited evidence as if presented to this court in a specific objection. Having undertaken this duplicative and time-consuming process, the court finds no support for any of Hudson's objections for reasons explained below.

### A.     Retaliation

Hudson's objection to the recommended dismissal of his retaliation claim reads, in full, as follows:

> **1.     The Magistrate Judge erred in finding that Plaintiff failed to exhaust his administrative remedies as it relates to his retaliation claim under Title VII.**
>
> Plaintiff sufficiently exhausted his administrative remedies as it relates to the filing of his Title VII retaliation charge. Although Plaintiff did not select the "retaliation" checkbox, he did select the "other" box, indicating that he suffered other adverse treatment in addition to his race discrimination claims. As a result, Plaintiff's retaliation claim should not be barred.

Objections at 3.[5]

Hudson's argument on exhaustion in his memorandum in opposition to summary judgment was similar, reading in full as follows:

> Defendant argues that Plaintiff's Charge of Discrimination does not include allegations pertaining to retaliation. (Dkt. No. 24-1 at p. 10). Plaintiff selected "other" on his Charge and went on to testify that his original Charge was misplaced by the Equal Employment Opportunity Commission; it was also similar to other Charges filed at the same time. (Exhibit R and Exhibit L at pps. 30:11-31:25).

ECF No. 28 at 11.

---

[5] *See also* Objection at 1 (indicating in preamble that retaliatory actions included discipline and a station transfer).

These arguments are not persuasive because Hudson did not check the box for retaliation and nothing in the text of his charge suggests he is complaining of retaliatory actions. To the contrary, the text solely and specifically challenges the testing process as unfair, arguably on a racial basis although even the racial component of the concerns requires a generous reading of the charge.

Hudson does not argue, much less present supporting evidence, for application of the exception to the exhaustion requirement allowed by *Nealon v. Stone*, 958 F.2d 584, 590 (4th Cir. 1992). The court has, nonetheless, considered this possibility *sua sponte*. This requires the court to determine whether any of the claimed retaliatory incidents alleged in the Complaint (thus pre-dating February 15, 2013) also post-date Hudson's administrative charge (dated May 10, 2012).

With the possible exception of Hudson's allegations that he has not been promoted despite being placed on the 2012 promotion list, nothing in Hudson's Complaint suggests that the alleged retaliatory incidents occurred in 2012, much less that they occurred after his May 10, 2012 administrative charge (and before the Complaint was filed).[6] Hudson's deposition testimony indicates that the alleged retaliatory incidents (other than his non-promotion despite placement on the 2012 promotion list) occurred sometime during or soon after October 2011. *See* Hudson dep. at 49-51 (discussing station move, which Hudson attributes to his questioning his superior's criticism of his crew); *id.* at 56-58 (discussing memorandum Hudson wrote questioning Kip's qualifications for placement on the 2011 promotion list and Kip's call to Hudson about the memorandum, and

---

[6] In his Complaint, Hudson alleges that, after complaining about discriminatory treatment, he was subjected to retaliatory treatment including a station transfer, non-promotion despite passing all requirements, and other harassment or intimidation. ECF No. 1 ¶¶ 30-31, 40-42. The only specifically identified incident of harassment or intimidation is that someone in the chain of command passed Hudson's letter complaining about the qualifications of a white applicant on the 2011 promotion list on to that white applicant (Christopher Kip). The Complaint does not provide dates for these incidents.

7

indicating both occurred after Hudson's station transfer); *id.* at 65 (indicating memorandum relating to Kip's qualifications was written in October 2011); *see also id.* at 83 (stating his allegations of fear and intimidation tactics refer to Kip's call); *id.* at 98-99 (stating he felt his station move was a form of discipline for questioning his superior's criticism of his crew).[7]

To the extent Hudson's claim relating to his placement on the 2012 promotion list is a claim for retaliation, there is some possibility that *Nealon* might apply.[8] As noted above, however, Hudson has neither made such an argument nor directed the court to evidence that would support it. The court's own review reveals an absence of evidence as to when Hudson was placed on the 2012 promotion list. Under these circumstances, the court finds an insufficient basis for applying the *Nealon* exception to any aspect of Hudson's retaliation claim, even assuming his allegations relating to his placement on the 2012 promotion list are intended to assert a retaliation claim.[9]

---

[7] The court has located these citations through a complete review of the portions of Hudson's deposition submitted as exhibits. As noted above, Hudson cites no specific evidence in his objection memorandum. Hudson's discussion of the evidence in his memorandum in opposition to summary judgment is minimally helpful due to his practice of making broad statements of fact followed by string citations to multiple depositions pages that, in a number of instances, fail to support the premise for which they are cited.

[8] In his objections, Hudson refers both to his failure to make the promotion list in 2011 and his later placement on the list in 2012. Objection at 1 (ECF No. 36) (stating he "was passed over for a promotion to Battalion Chief in 2011 after undergoing a series of testing before finally being eligible for promotion in 2012"); Objection at 3 (stating he "described how some of [the] white men [who] competed with him in the promotional testing process were placed ahead of him on the promotional list in 2011 and 2012"). Although these statements do not indicate that Hudson is alleging the non-promotions were retaliatory rather than the result of disparate treatment, the court considers the former possibility here.

[9] The filed excerpts from Hudson's deposition include testimony that he is now on the 2012 promotion list and that he is the last of seven or eight individuals on the list. Hudson dep. at 14. Hudson's testimony does not, however, suggest any concern that his placement on the list was due to some retaliatory motive or was otherwise discriminatory. Neither was this argument raised in Hudson's memorandum in opposition to summary judgment. *See, e.g.*, ECF No. 28 at 7 (listing four

8

### B.     Disparate Treatment – *Prima Facie* Case

**Report.**  The Report recommends summary judgment be granted on Hudson's disparate treatment claim because he has "present[ed] no evidence that any similarly situated person outside of his protected class was treated differently" and cannot, therefore, establish a *prima facie* case. Report at 9 (ECF No. 34). "Specifically, he has not identified any comparators that are similarly situated to him in all relevant respects." *Id*. The Report addresses affidavits of two *former* firefighters on which Hudson relies, noting that neither affidavit "identifies any specific white employee who was treated more favorably in any manner raised by Hudson." *Id.* at 10.[10]

**Objection.**   In his objection memorandum, Hudson argues that he previously presented evidence that "he was treated differently than similarly situated individuals who were not African American." ECF No. 36 at 3.  In support of this claim, Hudson asserts that he "directly compared himself to the class of 2009, wherein white applicants underwent similar testing conditions but were promoted, unlike Plaintiff." *Id*. Hudson also asserts that he "described how some . . . white men competed with him in the promotional testing process and were placed ahead of him on the promotional list in 2011 and 2012." *Id.; see also id.* at 4 (asserting, in discussing whether he has provided adequate comparator evidence, that "once [Hudson] had a passing score, he [was] placed at the bottom of the promotional list, behind numerous white individuals who were not as qualified

---

categories of discriminatory treatment, none of which relate to placement on the 2012 promotion list); *id.* at 11 (listing two categories of adverse employment actions which included "failure to be promoted" but make no specific mention of placement on the 2012 promotion list). The court, in fact, finds no mention of the 2012 promotion process or list in Hudson's opposition memorandum. The argument appears, instead, to have been raised for the first time in his objections, and then without any citation to supporting evidence.

[10]  The two affidavits are from firefighters who retired in 2008 and 2009 respectively.  Thus, even the general observations of these firefighters relate to a period distant from the one at issue: a selection process conducted during 2011.

9

with time and grade as Plaintiff.").[11] Hudson argues that he and these alleged comparators were similarly situated because "the participants, before being scored, are similarly situated in their respective positions and lines of work because they are vying for the *same* promotion." *Id*. (emphasis in original).

**Discussion.** Even taken at face value, Hudson's argument would not support a claim of discrimination because it would effectively eliminate the requirement for similarly situated comparators by assuming that all individuals vying for the same promotion through the same process are similarly situated. If this were enough, every denial of a promotion would support a *prima facie* case of discrimination so long as the individual promoted was from outside a protected class to which at least one individual who was not selected belonged.

The argument also fails for its categorical and conclusory approach to proof because it relies on allegations that "the class of 2009" and unidentified "white men" were treated differently than Hudson without providing any specific details as to why either the group or individuals should be considered similarly situated or precisely how they were treated differently under the same or similar circumstances. Most critically, as to his non-placement on the 2011 promotion list, Hudson fails to proffer evidence that any person was placed on the list despite failing one or more steps in the promotion process and it is undisputed that Hudson failed to achieve a passing score at the first stage in the process.

Nothing in Hudson's memorandum in opposition to summary judgment suggests greater specificity. His closest argument is a statement that he "testified and provided a plethora of evidence

---

[11] Neither here nor in his earlier memorandum in opposition to summary judgment does Hudson offer any evidence as to his qualifications relative to the other individuals on the 2012 promotion list.

10

to suggest he was more than qualified for the positions he sought through the supplemental testing program." ECF No. 28 at 11 (citing Hudson dep. at 12:3-25; 75:4-10).

Hudson cites two pages of his deposition in support of his assertion that he has provided a plethora of evidence in support of his qualifications. *Id.* The first-cited deposition excerpt states that Hudson is familiar with what a Battalion Chief does and has performed those duties on approximately twenty-five shifts (apparently subsequent to becoming "eligible" for the position in 2012). In the second-cited excerpt, Hudson indicates that he used the maximum amount of time available to prepare for the supplemental application process (apparently referring to the 2011 supplemental application, on which he failed to receive a passing score). Even if otherwise relevant, this testimony would not support Hudson's claim for disparate treatment as to the 2011 promotion process because it is undisputed that he did not pass the supplemental application stage of this process and he has proffered no evidence that a similarly situated white candidate was treated more favorably under the same circumstances.[12]

Nothing else in Hudson's memorandum in opposition to summary judgment suggests that he is even attempting to provide evidence of comparators. Instead, Hudson misstates the fourth prong of the relevant test as requiring "other evidence . . . raising an inference of discrimination[,]" disregarding the cited case's description of the fourth prong as requiring a showing "that similarly-situated employees outside the protected class received more favorable treatment." ECF No. 28 at 10 (citing *White v. BFI Waste Svcs, LLC*, 375 F.3d 288, 295 (4th Cir. 2004)).

---

[12] Evidence addressed in related cases establishes that Kip took and passed the various tests in the 2011 promotion process. *See Capone v. City of Columbia*, C.A. No. 3:12-cv-3369-CMC, ECF No. 54 at 9-11 (Corrected Opinion and Order entered January 9, 2015).

As noted above, Hudson did not address his particular placement on the 2012 promotion list in his memorandum in opposition to summary judgment. *See supra* n. 11. Even if he did, the court would lack jurisdiction over such a claim because it does not fall within the scope of the discrimination alleged in Hudson's May 10, 2012 charge.[13]

In sum, Hudson has failed to direct the court to evidence that he was treated less favorably than any similarly situated employee outside his protected class with respect to the 2011 promotion process. This is despite the City raising the issue in its motion for summary judgment and the Report relying on this deficiency in recommending summary judgment be granted. No allegations relating to disparate treatment as to the 2012 promotion list are properly before the court.

### C.     Disparate Treatment – Pretext

**Report.** The Report also recommends summary judgment be granted on Hudson's disparate treatment claim because Hudson has not proffered evidence sufficient to establish that the City's stated legitimate, nondiscriminatory reason for its actions was pretextual. Report at 11. The Report notes, first, that Hudson had "failed to refute the City's showing that Kip was qualified for the position . . . and makes no attempt to argue that Hudson's qualifications were demonstrably superior to Kip's." ECF No. 34 at 11.[14] The Report also notes that the evidence was "unrefuted . . . that Hudson did not receive a passing score" on a test that was a prerequisite to promotion. *Id.*

---

[13] The exception to the exhaustion requirement addressed in *Nealon* would not apply here as it applies only to retaliation claims. Thus, this court would not have jurisdiction over this aspect of Hudson's disparate treatment claim even if it arose after the charge was made.

[14] As the report notes, Hudson initially took the position that Christopher Kip should not have been promoted in 2011 because he lacked a required certification. The City has, however, presented uncontroverted evidence that Kip had the required certification before the relevant deadline.

**Objection.** Hudson argues that he "fully explained his superior qualifications for the promotion in his deposition testimony and . . . that he, like other African American testing participants, failed to make the promotion list." ECF No. 36 at 3. Hudson concedes that he failed to receive a passing score on the referenced test but argues he was treated less favorably even after he passed the test. *Id.* at 4 (discussed *supra* § B).

**Discussion.** Hudson's argument as to qualifications is unavailing as to his non-promotion in 2011 because he conceded he failed to pass the first step in that promotion process. It is unavailing as to his relative placement on the 2012 promotion list because he has not exhausted administrative remedies as to any such claim.

**D.     Disparate Impact**

Rather than challenging the Report's legal conclusion that the disparate impact claim must be supported by statistical evidence, Hudson refers to the testimony of William Tomes, who was involved in development of the promotion process including the test.   Objection memorandum at 5, ECF No. 36. Hudson states that "Tomes testified that the written test had undergone several variations over the years, which would support his contention that the sampling size would be too small for a valid analysis." *Id.* This statement does not suggest the existence of statistical evidence supporting the disparate impact claim. It, instead, indicates that no such evidence could likely be obtained.

Hudson's earlier memorandum in opposition to summary judgment is similarly devoid of any statistical evidence. He, instead, suggests in his discussion of facts (under the subheading "§ 1983") that disparate impact might be established based on the mere potential for discrimination resulting from the employer's control over the testing process. ECF No. 28 at 8 (alleging "promotional testing scheme . . . has a disparate impact upon African American employees because of the way in which

it is executed[,]" most critically the City's control over the process which included "direct input into identifying the 'best answer' to panel situational questions"; also noting Tomes' testimony that "the *possibility* exists for race discrimination in the testing process" (emphasis added)). In the argument section of this memorandum, Hudson combines his discussion of disparate impact with his discussion of disparate treatment, without reference to statistical evidence and assuming that both are established through the burden-shifting framework. *Id*. at 10-12 (ignoring distinctions between the theories). Hudson does not expressly mention disparate impact under his Section 1983 argument, instead focusing on generalized allegations that "African American employees [were] not given the same opportunities as white employees as it relates to the promotional testing process because of the customs and practices of Defendant in maintaining a great deal of control over the testing process[.]" *Id.* at 16.

Hudson also relies on proffered affidavits of two firefighters who retired in 2008 and 2009 as well as his testimony regarding his own experiences. This evidence fails to support a disparate impact claim because it is, at best, subjective and anecdotal (and at worst irrelevant to the time frame at issue). Hudson offers no support for his apparent premise that this evidence may substitute for the sort of statistical evidence generally required to support a disparate impact claim.

**E.     Wage Claim**

Hudson's objection to the recommendation that summary judgment be granted on his wage claim is entirely generic, consisting of one sentence summarizing the Report's recommendation and the following statement: "Plaintiff provided sufficient evidence that the rate and way in which he was paid did not align with the FLSA mandates, specifically through his testimony and that of other similarly situated firefighters." ECF No. 36 at 5-6.

14

The Report relied on a specific FLSA regulation applicable to overtime for firefighters in recommending Hudson's state and federal wage claims be dismissed. Hudson does not mention, much less discuss, this regulation either in his objection memorandum or in his memorandum in opposition to summary judgment. He has not, therefore, offered any argument that might support this claim.

**CONCLUSION**

For the reasons set forth above, the court adopts the Report and Recommendation and grants the City's motion in full. Despite absence of objections sufficiently specific to warrant *de novo* review, the court has conducted a *de novo* review as to all claims. Having done so, the court fully concurs in and adopts the reasoning and recommendations of the Magistrate Judge for reasons explained above, with the sole clarifications that the retaliation claim and disparate treatment claim to the extent based on Hudson's placement on the 2012 promotion list are dismissed for lack of subject matter jurisdiction, and summary judgment is granted on the remaining claims. Judgment shall be entered for the City accordingly.

IT IS SO ORDERED.

s/ Cameron McGowan Currie
CAMERON MCGOWAN CURRIE
Senior United States District Judge

Columbia, South Carolina
January 26, 2015

15